639 P.2d 1126

Martha Alice PAYNE and Lawrence W. Payne, husband and wife, Plaintiffs-Respondents,

v.

Timothy FOLEY, Stewart K. Brown and Deirdre Sampson, Defendants-Appellants.

No. 13460.

Supreme Court of Idaho.

Jan. 21, 1982.

Kevin F. Trainor and John A. Doerr, Doerr & Trainor, Twin Falls, for defendants-appellants.

John T. Lezamiz, Hepworth, Nungester & Felton, Twin Falls, for plaintiffs-respondents.

SHEPARD, Justice.

The sole issue in this appeal is an award to plaintiffs-respondents, Paynes, of $15,889 for attorney's fees on the grounds that defendant-appellant, Sampson, unreasonably defended a personal injury action which resulted in a judgment for the Paynes of $18,821. We reverse.

Martha Payne was a passenger in a Travelall vehicle and sustained injuries when that vehicle was involved in a three-car

accident. During a snow storm, the Travelall was stopped preparatory to making a left turn. The Travelall was struck a blow in the right rear fender by the vehicle owned and driven by Sampson, which proceeded on past the Travelall and came to rest in a ditch. Only seconds later a pickup truck driven by Foley struck the Travelall squarely in the rear. Because of their close proximity in time, Martha Payne was unable to state which of the two collisions had caused her injuries.

■ The Paynes filed an action for personal injuries and loss of consortium against Sampson, Brown, the owner of the pickup, and Foley, its driver. Foley did not appear and was defaulted. Brown settled with the Paynes and was dismissed from the action. Thus at the time of trial Sampson was the only defendant. Prior to trial the trial court contacted counsel for the Paynes and requested that an inquiry of settlement be initiated. Counsel for the Paynes in a letter to counsel for Sampson inquired concerning the possibility of settlement. No offer in response thereto was received until the second day of trial at which time counsel for Sampson communicated an offer of $7,500. That offer was declined by counsel for the Paynes. On the third day of trial, in response to an inquiry by counsel for Sampson, an offer of settlement for $55,000 was received from counsel for the Paynes. Sampson declined that offer of settlement. Following a four-day trial, a jury verdict awarded the Paynes $18,821.95 for Martha Payne's personal injuries, but denied any recovery on the loss of consortium claim.

The Paynes then moved for an award of costs and attorney's fees and the trial court awarded the Paynes $15,889 for attorney's fees as part of their costs, pursuant to I.C. § 12–121. The trial court found that liability had never been seriously contested by Sampson, that the only significant issue had been the amount of damages, that Sampson's offer of $7,500 was neither a reasonable nor a good faith offer of settlement, and that Sampson had failed at any time to enter into good faith negotiations towards settlement. The court held that the matter thus had been unreasonably defended and pursued.

As aforesaid, the sole issue on appeal is whether the trial court abused its discretion by awarding attorney's fees to the Paynes. Here it is clear that the trial court purported to penalize Sampson for failing to submit a good faith offer of settlement or refusing to enter into good faith settlement negotiations. We are directed to no legal authority which supports such discretion in the trial court. Even assuming that a trial court is vested with such discretion, the facts here do not support such a finding. If defense counsel is to be faulted for not making an offer of settlement until the second day of trial, what then are we to make of plaintiffs' counsel's first offer of settlement on the third day of trial? If defense counsel's valuation of the case is to be faulted because it was less than one-half of the ultimate jury verdict, what then are we to make of plaintiffs' counsel's offer of $55,000 as contrasted with the ultimate jury verdict of approximately $19,000.

Again, even assuming the authority of a trial court to make an award of attorney's fees based on the failure to either enter into good faith negotiations toward settlement, or make a reasonable good faith offer of settlement, it should be as incumbent upon one party as the other to enter into good faith negotiations or make a good faith offer of settlement. The record before us does not appear to indicate any more fault in that regard on the part of the defendant than on the part of the plaintiffs.

■ The trial court held the matter had been unreasonably defended and pursued on the part of Sampson. I.C. § 12–121 provides:

"In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees."

That statute was enacted in 1976 and after some divergence among the trial courts as to its interpretation this Court enacted I.R.C.P. 54(e)(1), stating:

"In any civil action the court may award reasonable attorney fees to the prevailing party or parties as defined in Rule

54(d)(1)(B), when provided for by any statute or contract. Provided, attorney fees under section 12–121, Idaho Code, may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation; * * * "

It is clear, therefore, that a trial court may, in its discretion, and upon proper findings,[1] award attorney's fees in an action of the present type when the matter has been defended frivolously, unreasonably or without foundation. It is axiomatic that those findings of the trial court must be supported by the record, or any such award of attorney's fees will constitute an abuse of discretion. Here we hold that the findings of the trial court are not supported by the record and hence the award of attorney's fees constituted an abuse of discretion on the part of the trial court.

 Insofar as the record indicates, the trial court's finding of an unreasonable defense by Sampson appears to be predicated on its finding that liability on Sampson's part was not "seriously contested". Nevertheless the record indicates that the amount of damages sustained by Martha and Lawrence Payne was clearly at issue as was the apportionment of liability and fault between Sampson and Foley. Special interrogatories were submitted to the jury as to the percentage of negligence attributable to Sampson, Foley and the driver of the Travelall. The jury found 49% of the negligence was attributable to Sampson, 51% to Foley, and that no other party's negligence contributed to Payne's injuries. The jury was unable to determine what portion of Payne's injuries were attributable to each defendant, but it did find that Sampson's negligence was not the proximate cause of the collision between Foley and the Travelall. The jury awarded Lawrence Payne nothing on his claim of loss of consortium. The record further reveals that the injuries

suffered by Martha Payne were somewhat nebulous and difficult of ascertainment and could have been viewed by a jury as worthy of a substantially smaller or a substantially increased verdict over that ultimately awarded by the jury.

Here Sampson, Foley and Brown (the owner of the vehicle driven by Foley) could be viewed as joint tortfeasors. I.C. § 6–803(1) creates a right of contribution among joint tortfeasors. Here it was at least arguable from the evidence that the Foley collision caused the major portion of the injuries suffered by Mrs. Payne, albeit the jury ultimately was unable to determine what portion of the injuries were attributable to the respective defendants. The verdict of the jury did apportion the negligence as between Foley and Sampson, thus establishing Sampson's right to contribution from Foley of 51% of the verdict. That verdict also may have established a right to contribution from Brown for his imputed negligence, I.C. § 49–1404(1).

A defense that is or arguably can be predicated upon a defendant's right to contribution or apportionment of fault as between joint tortfeasors is not unreasonable or without foundation. We conclude that Sampson's defense of the action was not unreasonable, frivolous or without a good faith foundation and the trial court's finding of such was erroneous. Hence we further conclude that the trial court's award of attorney's fees under the instant circumstances was an abuse of discretion and is reversed. Costs to appellants. No attorney's fees on appeal.

BAKES, C. J., and McFADDEN, DONALDSON and BISTLINE, JJ., concur.

BISTLINE, Justice, concurring with comment.

My concurrence should not be read as any indication that I have become persuaded that the Court had any constitutional au-

---

1. In *All American Realty v. Sweet*, No's. 13323 and 13135, —— Idaho ——, —— P.2d —— (Sept. 10, 1981), we held that the findings of fact required by Rule 54(e)(1) were not necessary to support the award of attorney's fees under I.C. § 12–121 because that case was initiated prior to March 1, 1979, the effective date of Rule 54(e)(1). This case is similarly postured but we need not address the issue of retroactive application, as the court below made specific findings of fact which we find to be clearly erroneous.

thority to embark upon legislating in the substantive area of attorney fees, as it did in "enacting" I.R.C.P. Rule 54(e)(1)—which is a drastic modification of I.C. § 12–121, a modification which was necessarily within the power of the legislature. *See Averitt v. City of Coeur d'Alene*, 100 Idaho 751, 605 P.2d 515 (1980), Bistline, J., specially concurring, and *Minich v. Gem State Developers*, 99 Idaho 911, 921, 591 P.2d 1078, 1088 (1979) Bistline, J., specially concurring, in both of which cases it was stated:

> "It was the prerogative of the legislature, and the legislature alone, to create law whereby attorney's fees may be awarded by district courts in all civil actions; where that sparsely worded statute has created confusion and proliferation of litigation, the legislature, not the Court, should amend its own statute, giving it such further definition and delimitation as it concludes to be necessary and desirable."

Writing for the last time on the matter of the Court's unconstitutional encroachment, and better illustrating my view that the legislature's § 12–121 should have stood or fallen on its own merit, I point to the poignant language in Judge James M. Cunningham's memorandum order entered in *Chapman v. Haney Seed Co., Inc.*, 102 Idaho 26, 624 P.2d 408 (1981):

> "Before the Court is a Memorandum of Costs and Disbursements filed by the plaintiff and a Motion to Disallow Item Eight (attorney fees in the amount of $3,866.25) of that memorandum.
>
> "The Motion to Disallow Plaintiffs' attorney fees as an item of cost is granted. Prior to the amendment of Section 12–121, Idaho Code, by Rule 54(e)(1), IRCP, I thought Section 12–121, Idaho Code, probably expressed the intention of the legislature to allow attorney fees to the prevailing party as a means of "making him whole". However, the inescapable

inference of Rule 54(e)(1), IRCP, as it now stands, is inescapable—the legislature intended that attorney fees be allowed the prevailing party only when the opposing party, "pursued or defended frivolously, unreasonably or without foundation". I corrected my erroneous interpretation of that section upon a receipt of copy of Rule 54(e)(1), IRCP, even though the Supreme Court was evidently willing to put up with my error in all cases filed prior to March 1, 1979. In short, I have followed this new rule promulgated ever since it has been rendered regardless of its effective date. I do not believe that the Haney Seed Company defended this case frivolously, unreasonably or without foundation. Thus I am not in a position to exercise my discretion in the matter of allowance of attorney fees in this action.

> "Costs are awarded plaintiff in the total sum of $438.50."

I am, notwithstanding considerations of Rule 54, and also notwithstanding considerations of "discretion," in agreement with the language of the Court's opinion which in effect holds that there is no authority in a trial court to insist upon, oversee, or second-guess settlement negotiations, if any, and certainly no authority to impose sanctions for "bad faith" bargaining. That is not to say, however, that a trial court ought not to make inquiry as to the possibility of a negotiated settlement. This has long been an acceptable procedure, and in my opinion a commendable one. In the long-run, it has become rather well established that attorneys are generally as interested in fair settlements as are district judges.